IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JUANITA BUSHMAN,<br><br>     Plaintiff,<br>v.<br><br>UTAH VALLEY UNIVERSITY,<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [24] MOTION FOR SUMMARY JUDGMENT AND FINDING MOOT [19] MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No. 2:14-cv-00748-DN<br><br>District Judge David Nuffer |

  Plaintiff Juanita Bushman alleges various incidents of religious harassment, religious disparate treatment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") over a nearly three-year period.[1] Defendant Utah Valley University ("UVU") moves for summary judgment.[2] Bushman responded in only partial opposition to the motion.[3] UVU replied in support of the Motion.[4]

---

[1] Complaint at 5–10, docket no. 3, filed Oct. 21, 2014.

[2] Defendant's Motion for Summary Judgment on All Claims (Motion), docket no. 24, filed March 30, 2016.

[3] Plaintiff's Memorandum in Opposition to Defendant Utah Valley University's Motion for Summary Judgment (Opposition), docket no. 30, filed June 1, 2016.

[4] Reply in Support of Motion for Summary Judgment on All Claims, docket no. 31, filed June 9, 2016.

The Motion is GRANTED because Bushman concedes summary judgment is appropriate for her harassment[5] and disparate treatment[6] claims[7] and fails to raise a genuine issue of material fact for her retaliation claim.

Because summary judgment is granted on all claims, UVU's motion for partial summary judgment[8] is MOOT.

## UNDISPUTED MATERIAL FACTS

The following undisputed material facts are a reconciliation of the statement of material facts within the Motion, Opposition, and Reply.

1. Bushman submitted three specific occasions when she believes that then-fellow employee, Laura McCullough, made offensive religious comments. The three incidents listed by Bushman occurred on October 27, 2010, September 22, 2011, and October 26, 2011.[9]

2. Bushman alleged other conversations between her and Laura McCullough in which McCullough expressed her dislike of, and displeasure with, the Mormon religion and culture. These allegations are not specific as to date or content, they are vague in nature, were not

---

[5] Opposition at 27 ("Ms. Bushman concedes that, after she complained to UVU's Human Resources Department, UVU counseled McCullough and she stopped making offensive comments about Ms. Bushman's religious preference."); *see Bertsch v. Overstock.com*, 684 F.3d 1023, 1028 (10th Cir. 2012) ("An employer's liability for allowing a . . . work environment [that violates Title VII] after it is reported to the employer by the employee arises *only if* the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment.") (emphasis added) (internal quotation marks omitted).

[6] Opposition at 27 ("Ms. Bushman has carefully considered UVU's arguments as to her claim of disparate treatment and believe they fairly summarize the relevant facts and the applicable legal principles. Accordingly, she does not oppose the granting of a summary judgment as to such claim.").

[7] *Id.* ("So the viability of Ms. Bushman's case boils down to whether she can raise a genuine issue of material fact as to whether . . . McCullough . . . sought to retaliate against Ms. Bushman because of making . . . complaints.").

[8] UVU Motion for Partial Summary Judgment for Failure to State a Claim Upon Which Relief Can Be Granted – Statue of Limitation, docket no. 19, filed December 1, 2015.

[9] Motion ¶ 1 at vii (undisputed).

2

written down or recorded by Bushman, and the religious comments seem to have been made in the course of ordinary conversations, often in large groups.[10]

3. Bushman's reaction to McCullough's opinion of the Mormon religion and Bushman's description of the conversations as harassment are highly subjective. Bushman believes that one negative comment about her religion, even when made during a conversation about religion, is harassment.[11]

4. All of the comments made by McCullough which Bushman complains about, were made when McCullough was an advisor, a co-worker with Bushman, and before McCullough became Bushman's supervisor with authority.[12]

5. Laura McCullough was appointed as the coordinating manager of the Academic Advisement Center with limited authority in October 2011. Her role was to coordinate and advise Associate Dean Bule (Bule) who retained supervisory authority. She did not have performance evaluation or disciplinary authority.[13]

6. Bushman complained to HR about McCullough's religious statements in February 2012.[14]

7. All of the religious comments stopped after Bushman complained to the University and the University counseled McCullough.[15]

---

[10] Motion ¶ 2 at vii (undisputed).

[11] Motion ¶ 3 at vii (undisputed).

[12] Motion ¶ 5 at viii (undisputed).

[13] Motion ¶ 6 at viii (undisputed).

[14] Motion ¶ 7 at ix (undisputed).

[15] Motion ¶ 8 at ix (undisputed)

8. Laura McCullough was given full supervisory authority over the Academic Advisement Center, including performance management and disciplinary authority over the other counselors, on March 29, 2012.[16]

9. On April 26, 2012, Bushman was issued a Written Warning by her supervisor Laura McCullough, Associate Dean Bule, and HR representative Kurt Ashworth.[17]

10. Prior to the Written Warning being issued Laura McCullough consulted with HR and with Dean Dayley and Associate Dean Bule who concurred in the action and who participated in the preparation of the Written Warning and the presentation of the Written Warning to Bushman.[18]

11. The Written Warning was based on what the University personnel perceived as a historical lack of cooperation with other counselors and not being a team player, causing negative atmosphere and tension. It was also based on complaints from students, a complaint from the IT department for which Bushman rejected responsibility, poor student evaluations, and resistance to training from HR.[19]

12. On July 9, 2012, Bushman was issued a Final Written Warning in lieu of termination.[20]

13. Although the Final Written Warning was signed by Laura McCullough, it was presented to Bushman by Dean Dayley and the head of HR, Vice President Ronald Price. The

---

[16] Motion ¶ 9 at ix (undisputed).

[17] Motion ¶ 11 at x (undisputed).

[18] Motion ¶ 12 at x (undisputed).

[19] Motion ¶ 13 at xi; Opposition at 13. Changing it to how University personnel perceived Bushman resolves the alleged dispute.

[20] Motion ¶ 14 at xi (undisputed).

Final Written Warning was prepared by McCullough, and HR, including Price and Ashworth in consultation with Dean Dayley, starting in June 2012.[21]

14. The Final Written Warning was triggered by what University personnel perceived as plaintiff's insubordination, calling her supervisor a liar and of low character during a counseling session with an HR representative, and by what University personnel perceived as Bushman's continued resistance to counseling and refusal to accept any responsibility for the problems she was creating.[22]

15. Laura McCullough left the University on October 19, 2012.[23]

16. The only disciplinary actions Laura McCullough took against Bushman were the Written Warning and the Final Written Warning.[24]

17. On August 7, 2013, Bushman's employment with the University was terminated by her supervisor Associate Dean Bule with the full support of Dean Dayley and the concurrence of University Vice President Wilson.[25]

18. Prior to terminating Bushman, Steve Bule consulted with HR and the Dean of the School of Arts, who concurred in the action.[26]

19. The termination was supported by numerous incidents and complaints which had occurred after the departure of Laura McCullough from the University, including what various University personnel perceived as Bushman's continued antagonistic attitude and behavior,

---

[21] Motion ¶ 15 at xi (undisputed).

[22] Motion ¶ 16 at xii; Opposition at 14–15. Changing it to how University personnel perceived Bushman resolves the alleged dispute.

[23] Motion ¶ 17 at xii (undisputed).

[24] Motion ¶ 18 at xii (undisputed).

[25] Motion ¶ 19 at xii (undisputed).

[26] Motion ¶ 20 at xii (undisputed).

complaints from the School of Music, the result of an accreditation evaluation that reflected negatively on Bushman, complaints from students, and the departure of yet another co-worker.[27]

20. Before approving the decision to terminate Bushman, Dean Dayley met with Bushman in March 2013 and in July 2013. Bushman refused to accept any responsibility.[28]

21. Dean Dayley conducted an investigation and interviewed all staff members, including Bushman, before approving the termination.[29]

22. Bushman did not believe she was the cause of the interpersonal problems in the Advisement Center.[30]

23. Bushman admits that no one else at the University harassed her based on her religion, discriminated against her based on her religion, or retaliated against her for reporting Laura McCullough to HR. Specifically, Bushman admits that no one in HR and no one in the School of Arts was involved in religious harassment, discrimination or retaliation, including Dean Dayley, Associate Dean Bule, Mark Wiesenberg (HR), Kurt Ashworth (HR), Vice president Ron Price (HR), Vice President Wilson, Music Chair Fairbanks, Professor Smith, Professor Nelson, Secretary Paula Nye, and the co-workers, fellow counselors who worked in the Center, including Christine Daoust, Rae Ann Ellis, Melissa Eiche, and Audrey Thrasher.[31]

---

[27] Motion ¶ 21 at xii–xiii; Opposition at 16–17. Changing it to how University personnel perceived Bushman resolves the alleged dispute.

[28] Motion ¶ 22 at xiii; Opposition at 17. The exhibits cited do not create a genuine dispute of material fact.

[29] Motion ¶ 23 at xiii (undisputed).

[30] Motion ¶ 24 at xiii; Opposition at 17–18.

[31] Motion ¶ 25 at xiii–xiv (undisputed).

24. Bushman admits that Dean Dayley and Steve Bule, both of whom were decision makers in each of the warnings and the termination decision, are, like Bushman, both Latter-Day Saints (Mormons).[32]

25. Bushman admits she has no direct evidence to support her retaliation claim.[33]

26. The only evidence Bushman cites in support of her retaliation claim is the timing of the Written Warning Bushman received from her supervisor Laura McCullough, Associate Dean Bule, and HR representative Kurt Ashworth.[34]

27. Bushman complains that she was excluded from conversations and other activities, including not being invited to lunch, but admits she was never denied any benefits of employment, pay raises, promotion, or prevented from attending employment connected meetings such as The Learning Circle.[35]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] A factual dispute is genuine when "there is sufficient evidence on each so that a rational trier of fact could resolve the issue either way."[37] In determining whether there is a genuine dispute as to material fact, the district court

---

[32] Motion ¶ 26 at xiv (undisputed).

[33] Motion ¶ 27 at xv (undisputed).

[34] Motion ¶ 28 at xv; Opposition at 20. Bushman contends this is in dispute because she "alleges the reasons for the discipline which led up to the point of termination and the decision of termination itself are false and support her claim that such reasons are pretextual." In support, she cites four exhibits. Setting aside the concern that the exhibits fail to satisfy the Federal Rules of Evidence admissibility requirements, these exhibits do not create an issue of fact. Bushman's private notes and letters only demonstrate that Bushman disagreed with her supervisor's interpretation of events. They do not provide an additional evidentiary basis for supporting her retaliation claim. In fact, they only reiterate her assertion regarding the questionable timing of the Written Warning.

[35] Motion ¶ 29 at xv (undisputed).

[36] Fed. R. Civ. P. 56(a).

[37] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[38]

## DISCUSSION

**Bushman bases her Title VII claim for discriminatory retaliation on circumstantial evidence and she fails to prove a prima facie case of retaliatory discrimination.**

"In cases brought under Title VII . . . where circumstantial evidence is the basis for the claim, [the] analysis at the summary judgment stage is governed by the burden-shifting framework laid out in *McDonnel Douglas Corp. v. Green*."[39] "The *McDonnell Douglas* test involves a three-step analysis."[40]

> First, the plaintiff must prove a prima facie case of discrimination. If the plaintiff satisfies the prima facie requirements, the defendant bears the burden of producing a legitimate, nondiscriminatory reason for its action. If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext.[41]

Bushman admits that she bases her Title VII claim for discriminatory retaliation on circumstantial evidence.[42] Therefore, the *McDonnel Douglas* test applies.

To establish a prima facie case for retaliation, the plaintiff must show the following: "(1) he or she is engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action."[43]

---

[38] *Id.*

[39] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

[40] *Id.*

[41] *Id.*

[42] Opposition at 22.

[43] *Garrett*, 305 F.3d at 1220.

Assuming Bushman engaged in protected opposition to discrimination and was subject to adverse employment action, she fails to show a causal connection between the protected activity and the adverse action. "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[44] The standard for proving this prong "is low."[45]

In *Murray v. City of Sapulpa*,[46] one of the plaintiffs alleged that he was terminated because he filed a complaint with the Equal Employment Opportunity Commission.[47] "Four months before his discharge, [the plaintiff] filed a complaint with the Equal Employment Opportunity Commission against" the employer.[48] The timing of his termination in relation to when he complained to the EEOC was the only evidence he presented to make a prima facie case of retaliation. The court held that he "presented insufficient evidence to support the inference that his termination was in retaliation to his complaints to the" EEOC.[49]

Similar to *Murray*, Bushman's evidence is insufficient. She acknowledges she "does rely on the temporal proximity between her complaints about McCullough, McCullough then obtaining supervisory authority over [her] and McCullough's immediate efforts to discipline her,

---

[44] *Id.* at 1221.

[45] *Id.*

[46] 45 F.3d 1417 (10th Cir. 1995).

[47] *Id.* at 1421.

[48] *Id.*

[49] *Id.* at 1422; *see also Garrett*, 305 F.3d at 1221 ("[I]n Murry, the plaintiff had only one possible 'connection': the fact that he filed complaints with the EEOC and was subsequently fired. Here, [the plaintiff] has presented not only evidence of temporal connections, but he has also documented evidence of a marked shift in the attitudes and treatment of him by his supervisors. The evidence presented by [the plaintiff] satisfies the requirements necessary to make a prima facie case of retaliation.").

to forge the necessary causal connection."[50] This is not enough to show a causal connection between her protected complaint and termination.

**Even if Bushman were able to prove a prima facie case for retaliation, the University had legitimate reasons for terminating her, and temporal proximity alone does not show pretext.**

The University offers many reasons for deciding to terminate Bushman's employment.[51] If true, there can be no serious argument that they are not legitimate justification for termination. Indeed, Bushman does not dwell on whether, in the abstract, the reasons enumerated by the University were legitimate; she instead jumps to the question of pretext.[52]

"In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision* not the plaintiff's subjective evaluation of the situation."[53] "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[54]

> [T]emporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext. In other words, temporal proximity is only one factor that can give rise to a finding of pretext; it must be combined with other evidence proffered by the plaintiff to create a reasonable inference that the employer's asserted reason for discipline is unworthy of belief. We do not allow "very close" temporal proximity to operate as a proxy for this evidentiary requirement.[55]

---

[50] Opposition at 31.

[51] *See* Undisputed Material Facts ¶¶ 11, 14, and 19.

[52] Opposition at 21–34. It is hard to track Bushman's argument. At points, she seems to be making her prima facie case, but, in that same section speaks of the University's burden. *See, e.g.*, Opposition at 32–34.

[53] *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011) (emphasis in original; internal quotation marks omitted).

[54] *Id.* (internal quotation marks omitted).

[55] *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1236 n.10 (10th Cir. 2015) (internal quotation marks and citations omitted) (punctuation altered).

Bushman does not satisfy the evidentiary requirements. She does not provide evidence that demonstrates pretext. She attaches exhibits that reflect her subjective evaluation of the situation. And she offers only the not-so-close temporal proximity of her protected complaints to her termination as proof of pretext.[56] This does not satisfy her burden.

**ORDER**

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment on All Claims[57] is GRANTED.

IT IS FURTHER ORDERED that UVU Motion for Partial Summary Judgment for Failure to State a Claim Upon Which Relief Can Be Granted – Statute of Limitation[58] is MOOT.

The clerk of the court is directed to CLOSE this case.

Dated January 30, 2017.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[56] *See* Opposition at 30–34.

[57] Docket no. 24, filed March 30, 2016.

[58] Docket no. 19, filed December 1, 2015.